O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSHUA B. SHAPIRO,

                Plaintiff,

     v.

ABRAHAM LINCOLN
UNIVERSITY SCHOOL OF LAW,
HYUNG J. PARK, in his
official and individual
capacity, DAVID LEE, in
his official and
individual capacity, and
DARYL JOAN FISHER OGDEN,
in her official and
individual capacity,

              Defendants.

 

Case No.
CV 10-03177-JGB (FMOx)

**ORDER**

**[Motions filed June 28,
2013]**

    Before the Court are a Motion for Summary
Judgment filed by Defendants Abraham Lincoln
University School of Law, Hyung J. Park, David Lee,
and Daryl Joan Fisher Ogden(Doc. No. 110)and a Motion
for Summary Judgment or in the Alternative Motion for
Partial Summary Judgment filed by Plaintiff Joshua B.
Shapiro(Doc. No. 111).  After considering the papers
in support of and in opposition to the motions, the
Court GRANTS Defendants' Motion for Summary Judgment

and DENIES Plaintiff's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff Joshua B. Shapiro filed a Complaint against Defendants Abraham Lincoln University School of Law, Hyung J. Park, David Lee, and Daryl Joan Fisher Ogden (collectively, "Defendants") on April 28, 2010. (Doc. No. 1.)  On November 29, 2010, the Court granted Plaintiff's Motion for Leave to File a First Amended Complaint ("FAC").  (Doc. No. 15.)  Plaintiff filed the FAC on December 17, 2010, (Doc. No. 16) and on January 5, 2011, Defendants filed a Motion to Dismiss the FAC. (Doc. Nos. 17.)  Plaintiff opposed and filed a second Motion for Leave to Amend on February 25, 2011.  (Doc. Nos. 20, 22.)  On May 4, 2011, the Court (Morrow, J.) granted in part and denied in part Defendants' Motion to Dismiss and denied Plaintiff's Motion for Leave to Amend in part.  (Doc. No. 25.)

On May 23, 2011, Plaintiff filed his Second Amended Complaint ("SAC," Doc. No. 31), alleging claims for: 1) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, 12181, 12182, and 12203; 2) breach of contract; 3) breach of the covenant of good faith and

fair dealing;[1] and 4) negligent infliction of emotional distress.  (Doc. No. 31.)  Defendants answered on June 9, 2011 (Doc. No. 32).

On May 23, 2011, the Court (Morrow, J.) entered a Scheduling Order setting November 25, 2011 as the fact discovery cut-off; January 13, 2012 as the expert discovery cut-off; February 6, 2012 as the motions hearing cut-off; and April 3, 2012 as the trial date. (Doc. No. 29.)  On March 14, 2012, trial date was vacated in light of the fact that the parties "manifestly failed to follow the court's order" to file a proposed pretrial conference order and "failed to comply with Local Rule 16 for a second time."  (Doc. No. 83.)  On January 11, 2013, this action was transferred to the Honorable Jesus G. Bernal.  (Doc. No. 102.)

On March 13, 2013, Plaintiff filed a Motion for a Status Conference and to Conduct Further Discovery. (Doc. No. 103.)  The Court denied Plaintiff's Motion as to granting leave to amend and reopening discovery, and granted Plaintiff's Motion as to allowing the parties to file motions for summary judgment and to set the trial date.  The Court set July 29, 2013 as the hearing

---

[1] Plaintiff's breach of contract and breach of implied covenant claims are only against Defendant ALU as the Court (Morrow, J.) dismissed those claims against the individual Defendants without leave to amend.  (Order at 15-18, Doc. No. 25.)

cut-off for any motions for summary judgment and November 26, 2013 as the trial date.  (Doc. No. 108.)

On June 28, 2013, Defendants filed a Motion for Summary Judgment ("Defs. MSJ," Doc. No. 110), attaching:

- Declarations of Daryl Ogden-Fisher and Robert Rees (Doc. No. 110-1);
- Exhibits 1-11 (Doc. Nos. 110-1 – 110-2); and
- Separate Statement of Uncontroverted Facts ("Defs. SUF").[2]

On July 12, 2013, Plaintiff filed his Opposition ("Pl. Opp.," Doc. No. 119), attaching:

- Statement of Genuine Disputes of Material Facts ("Pl. SGD," Doc. No. 117)and
- Declaration of Joshua B. Shapiro ("Shapiro Decl. iso Opp.," Doc. No. 120).

On July 19, 2013, Defendants replied ("Defs. Reply," Doc. No. 121) attaching:

- Objection to Declaration of Plaintiff Joshua B. Shapiro ("Shapiro Decl. Obj.," Doc. No. 121-1).

Plaintiff filed his Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment on June 28, 2013 (Doc. No. 111), which attached:

---

[2] Due to the volume of evidence filed in support of, in opposition to, and in reply in support of each of the two MSJs, the Court does not enumerate each attached Exhibit, but describes the documents in the evidentiary citations as needed.

- Statement of Uncontroverted Facts ("Pl. SUF," Doc. No. 113) and

- Declaration of Joshua B. Shapiro ("Shapiro Decl.," Doc. No. 114), attaching Exhibits A-T (Doc. Nos. 114 – 114-5).

On July 10, 2013, Defendants filed their Opposition[3] ("Defs. Opp.", Doc. No. 115), attaching:

- Declarations of Daryl Fisher-Ogden and Robert Rees ("Fisher-Ogden Decl. iso Opp." and "Rees Decl. iso Opp.," Doc. No. 115-1), attaching Exhibit A (Doc. Nos. 115-1 – 115-3);

- Objection to Declaration of Plaintiff Joshua Shapiro ("Shapiro Decl. Obj. iso Opp.," Doc. No. 115-4); and

- Statement of Genuine Issues ("Defs. SGI," Doc. No. 115-5).

Plaintiff replied on July 15, 2013 ("Pl. Reply," Doc. No. 118), attaching:

- Plaintiff's Objections to Evidence (Doc. No. 116).

---

[3] Plaintiff argues that Defendants' Opposition should not be considered because it was untimely filed. The Court notes that Plaintiff's Opposition to Defendants' MSJ was also untimely filed. "A district court has discretion to consider an untimely opposition brief." Lutz v. Delano Union Sch. Dist., No. 8-1787, 2009 WL 2525760, at *3 n. 2 (E.D. Cal. Aug. 7, 2009)(citations omitted). The Court considers both Oppositions.

1

## II.  LEGAL STANDARD[4]

2

3

### A.   Summary Judgment

4

5

A motion for summary judgment shall be granted when
there is no genuine issue as to any material fact and
the moving party is entitled to judgment as a matter of
law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247-48 (1986).  The moving party
must show that "under the governing law, there can be
but one reasonable conclusion as to the verdict."
Anderson, 477 U.S. at 250.

6

7

8

9

10

11

12

13

Generally, the burden is on the moving party to
demonstrate that it is entitled to summary judgment.
Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998);
Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,
707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party
bears the initial burden of identifying the elements of
the claim or defense and evidence that it believes
demonstrates the absence of an issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

14

15

16

17

18

19

20

21

22

When the non-moving party has the burden at trial,
however, the moving party need not produce evidence
negating or disproving every essential element of the
non-moving party's case.  Celotex, 477 U.S. at 325.

23

24

25

26

27

---

[4] Unless otherwise noted, all references to "Rule"
refer to the Federal Rules of Civil Procedure.

28

Instead, the moving party's burden is met by pointing
out there is an absence of evidence supporting the non-
moving party's case.   Id.

The burden then shifts to the non-moving party to
show that there is a genuine issue of material fact
that must be resolved at trial.   Fed. R. Civ. P. 56(e);
Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.
The non-moving party must make an affirmative showing
on all matters placed in issue by the motion as to
which it has the burden of proof at trial.   Celotex,
477 U.S. at 322; Anderson, 477 U.S. at 252; see also
William W. Schwarzer, A. Wallace Tashima & James M.
Wagstaffe, Federal Civil Procedure Before Trial,
14:144.   "This burden is not a light one.   The non-
moving party must show more than the mere existence of
a scintilla of evidence."   In re Oracle Corp. Sec.
Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing
Anderson, 477 U.S. at 252).   "The non-moving party must
do more than show there is some 'metaphysical doubt' as
to the material facts at issue."   In re Oracle, 627
F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd.
v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the
evidence is such that a reasonable jury could return a
verdict for the non-moving party."   Anderson, 477 U.S.
at 248.   In ruling on a motion for summary judgment,
the Court construes the evidence in the light most

favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

Cross-motions for summary judgment do not necessarily permit the judge to render judgment in favor of one side or the other. <u>Starsky v. Williams</u>, 512 F.2d 109, 112 (9th Cir. 1975). The Court must consider each motion separately "on its own merits" to determine whether any genuine issue of material fact exists. <u>Fair Housing Council of Riverside County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001). When evaluating cross-motions for summary judgment, the court must analyze whether the record demonstrates the existence of genuine issues of material fact, both in cases where both parties assert that no material factual issues exist, as well as where the parties dispute the facts. <u>See</u> <u>Fair Housing Council of Riverside County</u>, 249 F.3d at 1136 (citation omitted).

**III. FACTS**

**A.   Evidentiary Objections**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002); <u>see</u> Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider

evidence with content that would be admissible at
trial, even if the form of the evidence would not be
admissible at trial.  See Fraser v. Goodale, 342 F.3d
1032, 1036 (9th Cir. 2003); Block v. City of Los
Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001).

Defendants object to numerous paragraphs of
Plaintiff's Declaration in support of his Motion for
Summary Judgment, or in the alternative, Partial
Summary Judgment, and Plaintiff's Declaration in
Opposition to Defendants' Motion for Summary Judgment
on the grounds that the evidence is hearsay, an
improper legal conclusion, an improper expert opinion,
contradicted by or misstates documents, irrelevant,
improper expert opinion, argumentative, not the best
evidence, speculative, or lacks foundation.  (Doc. Nos.
115-4, 121-1.)

The Court need not consider "boilerplate
recitations" and "blanket objections [submitted]
without analysis applied to specific items of
evidence."  Doe v. Starbucks, Inc., No. 08-0582, 2009
WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).
Furthermore, "objections to evidence on the ground that
it is irrelevant, speculative, and/or argumentative, or
that it constitutes an improper legal conclusion are
all duplicative of the summary judgment standard
itself" and are thus "redundant" and unnecessary to
consider here.  Burch v. Regents of Univ. of Cal., 433

F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); <u>see also</u> <u>Anderson</u>, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). Thus, the Court does not consider any objections on the grounds that the evidence lacks foundation, is misleading, vague, ambiguous, conclusory, speculative, conjecture, compound, irrelevant, or argumentative. These objections are challenges to the characterization of the evidence and are improper on a motion for summary judgment.  The Court overrules these objections as frivolous.

Once these objections are excluded, the only remaining objections are Defendants' objections for hearsay, improper expert opinion, and the best evidence rule.  (<u>See</u> Doc. Nos. 115-14, 121-1.)

Defendants object to 49 paragraphs in Plaintiff's Declarations on hearsay grounds.  (<u>See</u> <u>id.</u>)  Rule 56 explicitly permits a party to support a motion for summary judgment with declarations that set forth facts based upon personal knowledge.  Fed. R. Civ. P. 56(c)(1) & (4).  The majority of Defendants' hearsay objections are fundamentally flawed because the statements are based upon Plaintiff's personal knowledge and many of the statements are not offered for the purpose of proving the truth of the matters asserted but, rather, to established that statements were made to Plaintiff.  (<u>See, e.g.</u>, Shapiro Decl. ¶¶

7, 8 (describing the testing accommodations Plaintiff requested and was promised).)  However, the Court sustains Defendants' objections to Shapiro Declaration in support of Plaintiff's MSJ ¶¶ 26, 30, 31, 33, 36 and Shapiro Declaration in support of Plaintiff's Opposition ¶¶ 33, 40 because Plaintiff does not set forth a factual basis or personal knowledge  for these statements regarding Defendants' actions and the consequences of those actions.  All Defendants' other hearsay objections are overruled.

Defendants object to paragraphs of Plaintiffs' declarations as improper expert opinion.  The Court understands these objections to be on the basis that the statements constitute improper lay opinion pursuant to Federal Rule of Evidence 701.  Lay testimony in the form of opinions or inferences is proper when "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge . . . ."  Fed. R. Evid. 701.  Almost all of the testimony Defendants object to on the grounds of improper lay opinion clearly fit within the definition of proper lay opinion.  However, Plaintiff's statements that his ADHD, bipolar disorder, narcissistic personality disorder, and physical disability constitute a learning disability within the

meaning of the ADA requires scientific, technical, or specialized knowledge that exceeds the scope of common experience.  Therefore, the Court sustains Defendants' objection as to ¶ 3 of the Shapiro Declaration in Support of Plaintiff's MSJ and ¶ 3 of the Shapiro Declaration in support of Plaintiff's Opposition.  All Defendants' other objections on this ground are overruled.

Under the best evidence rule, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.  The best evidence rule applies when secondary evidence, either oral or written, is offered to prove the content of writing without producing the physical item itself.  United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004).  Defendants' best evidence rule objections are overruled as none of the evidence is introduced to prove the content of a writing and, in many cases, Plaintiff directly cites the documentary evidence referenced.

Plaintiff objects to portions of the Fisher-Ogden Declaration and Rees Declaration in support of Defendants' Opposition on the grounds that the identified portions are: speculative, lack foundation, hearsay, and lack required authentication.  (See Doc. No. 116.)  As stated above, objections to evidence on

the grounds that it is speculative or lacks foundation are redundant of the summary judgment standard and unnecessary to consider.  Plaintiff's hearsay objections fail because the statements he objects to are based upon the affiant's personal knowledge. Additionally, Plaintiff's objections on the grounds of lack of required authentication fail because statements made in a signed declaration do not need to be separately authenticated.  Therefore, all Plaintiff's objections are overruled.

**B.  Uncontroverted Facts**

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the Motions for Summary Judgment.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

Abraham Lincoln University School of Law ("ALU") is a private, online, distance learning law school in Los Angeles that offers a four-year J.D. program.  (Defs. SUF ¶¶ 1, 4.)  ALU is not accredited by the American

Bar Association or the State Bar of California.  (Id. ¶ 4.)  Hyung J. Park is the President of ALU and, at all times relevant to this action, David Lee was the Provost, and Daryl Fisher-Ogden was the Dean.  (Id. ¶¶ 2, 3.)

ALU students enroll by signing annual contracts. Plaintiff attended ALU from January 23, 2007 to January 27, 2008 and enrolled at ALU from February 19, 2008 to February 18, 2009.  (Id. ¶ 5.)

Exam Accommodations

ALU has a policy of allowing students the same accommodations as those granted by the Committee.  If the student has not received accommodations from the Committee yet, ALU looks at the accommodations recommended by the student's medical practitioner. (Id. ¶ 8.)

Plaintiff frequently asked for requested accommodations, such as having additional time, taking tests of different days, and having tests re-graded. (Id. ¶ 9.)  In July 2007, Plaintiff sent Dean Fisher-Ogden an email, asking to retake his torts exam because of his disability.  (Id. ¶ 6.)  Dean Fisher-Ogden responded that Plaintiff may be a candidate for a special accommodation, and if he was not already receiving accommodation, he must receive approval from

14

the Committee of Bar Examiners.  (Id. ¶ 7.)  Dean Fisher-Ogden directed Plaintiff to Form E on the California State Bar website, which his doctor could complete and submit to ALU, and ALU would provide additional time on future examinations in accordance with his doctor's instructions. (Id.)

ALU does not have a record of having received any information in 2007 regarding Plaintiff's disabilities from a medical practitioner or clinical psychologist. (Id.)  However, Plaintiff was still granted accommodations, including extra time on and the re-grading of several exams. (Ogden-Fisher Decl., Exs. 3-10.)  On one occasion in March 2008, Plaintiff was not given extra time on an exam.  Dean Fisher-Ogden apologized for the oversight and offered for Plaintiff to retake the exam with extra time, or receive an extra ten points to his overall score.  Plaintiff chose the latter option.  (Defs. SUF ¶ 12.)

Westlaw Account

In connection with their enrollment at ALU, each student receives a Westlaw account.  (Id. ¶ 22.)  On October 1, 2008, Andrea Hansen, ALU's Westlaw representative told Dean Fisher-Ogden that Westlaw had received complaints from its Reference Attorney Department regarding Plaintiff.  (Id. ¶ 23.)  On

October 17, 2008, Dean Fisher-Ogden received a copy of an email from Westlaw to Plaintiff, warning that if he continued his unprofessional conduct, his Westlaw account would be suspended.  (Id. ¶ 24.)  On or about December 17, 2008, Dean Fisher-Ogden was notified that Westlaw was suspending Plaintiff's account due to unprofessional conduct after receiving warnings from Westlaw.  (Id. ¶ 25.)  Dean Fisher-Ogden explained Westlaw's decision to suspend Plaintiff's account to Plaintiff on December 18, 2008.  (Id.)  Additionally, Dean Fisher-Ogden communicated with Westlaw regarding restoring Plaintiff's account.  She noted that she believed Westlaw was within its rights to terminate his access, and it was up to Westlaw to give Plaintiff another chance.  (Shapiro Decl., Ex. L.)

On December 29, 2008, President Park placed Plaintiff on administrative probation because ALU found that Plaintiff had engaged in unprofessional behavior. He stated that ALU would request that Plaintiff's Westlaw access be reinstated provided there were no additional complaints about unprofessional behavior from either ALU or Westlaw staff members.  In the event that President Park received another complaint about Plaintiff behaving in an unprofessional manner, Plaintiff's access to Westlaw would end and his enrollment at ALU would be terminated.  President Park requested that Plaintiff review the conditions, sign,

date, and return the letter.  Upon receipt of the letter, ALU would request that Westlaw reinstate Plaintiff's access.  (Pl. SUF ¶ 19; Shapiro Decl., Ex. H.)  Plaintiff informed President Park that he did not agree with his being placed on administrative probation and that he refused to sign any document acknowledging responsibility for unprofessional behavior or violation of the honor code.  (Pl. SUF. ¶ 20.)

California Bar Foundation Scholarship

     When ALU students seek scholarships from outside organizations, Dean Fisher-Ogden customarily provides information to organization, including transcripts and certificates of financial cost to assist students in obtaining the scholarships.  (Defs. SUF ¶ 13.) In February 2008, Dean Fisher-Ogden learned that Plaintiff applied for a Public Interest Scholarship from the California Bar Foundation.  Dean Fisher-Ogden then provided the California Bar Foundation with a Certificate of Financial Need and letter recommending Plaintiff as a scholarship awardee.  (Id. ¶¶ 13, 14.) In May 2008, Dean Fisher-Ogden received a letter from the California Bar Foundation acknowledging ALU's support of Plaintiff for the Public Interest Scholarship and notifying her that Plaintiff was not selected as the recipient.  (Id. ¶ 15.)

First Year Law Students' Examination

As a prerequisite for taking the California Bar Exam, students from unaccredited law schools must pass the First-Year Law School Students' Examination ("FYLSX") at the end of their first year of law school. In conformity with the Guidelines for Unaccredited Law School Rules ("Guidelines"), ALU students who do not pass the First Year Law School Examination within three administrations must be promptly disqualified from a law school's J.D. program.  (Id. ¶¶ 16, 17.)

On or about February 26, 2008, Dean Fisher-Ogden provided the Committee of Bar Examiners ("Committee") with the Form F Testing Accommodations-Law School Verification, which certified that ALU was providing Plaintiff with testing accommodations of one extra hour for every three hour exam.  (Id. ¶ 18.)  In May 2008, ALU became aware that Plaintiff requested testing accommodations from the Committee for the June 2008 FYLSX.  (Id. ¶ 20.)  On May 20, 2008, Dean Fisher-Ogden sent the First Year Law Students' Examination Certification Form to the Committee.  (Id. ¶ 19.)

On March 27, 2008 the Committee acknowledged receipt of Plaintiff's petition for testing accommodations for the June 2008 FYLSX.  The Committee requested that he submit the Form F by May 15, 2008 for the evaluation of his petition.  (Id. at Ex. N.)  On

May 7, 2008, the Committee notified Plaintiff of the accommodations he had been granted.  The excerpt from the expert consultant's report noted that Plaintiff was being granted 33% extra time on his examinations at ALU.  The letter also informed Plaintiff that he could appeal the determination within ten days.  (Shapiro Decl., Ex. O.)  On June 10, 2008, Michael Perkins, a licensed clinical psychologist treating Plaintiff, wrote to the Committee requesting that the Committee's determination of accommodations be reconsidered and Plaintiff be allowed an hour for hour accommodation for the June 2008 FYLSX. (Shapiro Decl., Ex. P at 1-2.)  On July 31, 2008, the Committee acknowledged receipt of Dr. Perkins's letter, noting that the letter could not be considered before the examination was administered because it was received after the deadline for appeals for the June 2008 FYLSX, but the letter could not processed in connection with a future examination. (Shapiro Decl., Ex. P at 4.)

Plaintiff took and failed the FYLSX in June 2008, October 2008, and June 2009.  (Id. ¶¶ 21, 26.)  He received accommodations from the Committee for all three examinations.  (Id. ¶ 21.)

In October 2009, ALU notified Plaintiff in writing that he was being academically dismissed because he did not pass the FYLSX within three attempts.  (Id. ¶ 26.)

## IV.  DISCUSSION

### A.   Americans With Disabilities Act

#### 1.   Disability Discrimination

Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, prohibits discrimination on the basis of disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a); <u>Oliver v. Ralphs Grocery Co.</u>, 654 F.3d 903 (9th Cir. 2011).  To establish a claim under the Title III of the ADA, a plaintiff must prove that: 1) he is disabled under the Act; 2) the defendant operates a place of public accommodation; and 3) the defendant discriminated against him based on his disability by failing to make a requested reasonable modification that was necessary to accommodate his disability.  42 U.S.C. §§ 12182(a), (b)(2)(A)(ii); <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1085 (9th Cir. 2004).

**Disability Under the ADA**

Under the ADA, an individual is disabled if that individual: 1) has a physical or mental impairment that

substantially limits one or more of the individual's major life activities; 2) has a record of such an impairment; or 3) is regarded as having such an impairment.  <u>Deppe v. United Airlines</u>, 217 F.3d 1262, 1265 (9th Cir. 2000).

An impairment under the ADA includes physiological disorders of conditions affecting body systems such as the cardiovascular or digestive systems, and any mental or psychological disorder such as emotional or mental illness.  29 C.F.R. § 1630.2(h).  Additionally, to be substantially limited in a major life activity means that a person must be unable to perform a major life activity, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," or be significantly restricted as to the condition, manner, or duration under which he can perform a major life activity compared to the average person.  29 C.F.R. § 1630.2.

Plaintiff alleges that he has a learning disability, making him disabled under the ADA.  (SAC at 26-27.)  Under the ADA, "a learning-impaired student may properly be considered to be disabled if he could not have achieved success without special accommodations."  <u>Wong v. Regents of Univ. of Cal.</u>, 410 F.3d 1052, 1065 (9th Cir. 2005).  At the summary judgment stage, the relevant question for determining whether a plaintiff is disabled under the ADA because

of a learning impairment is whether the plaintiff might be able to prove to a trier of fact that his impairment substantially limited his ability to learn as a whole, for purposes of daily living, as compared to most people.  Id.

Defendants argue that Plaintiff's ADA claims fail because he has not presented sufficient evidence to establish that he is disabled within the meaning of the ADA.  (Defs. MSJ at 11-12.)  However, "Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment or major life activity at the summary judgment stage. . . . [A] plaintiff's testimony may suffice to establish a genuine issue of material fact."  Head v. Glacier Northwest Inc., 413 F.3d 1053, 1058-59 (9th Cir. 2005).  Here, Plaintiff has provided a psychological report in which Plaintiff was assessed as having a reading disability, a letter from a psychologist verifying his diagnoses of having ADHD and bipolar disorder which contributed to his difficulty with exams, and evidence that the Committee of Bar Examiners of the State Bar of California granted his testing accommodations for the FYLSX.  (Shapiro Decl., Ex. A at 3, 21-25.)  This evidence is, at the very least, sufficient to create a genuine issue of material fact as to whether Plaintiff is disabled under the ADA due to his learning impairment.

**<u>Discriminatory Acts and Practices</u>**

Plaintiff alleges that Defendants discriminated against him because he was not given the required accommodations for his disability, including fair exams, additional time on exams, and rest breaks. Additionally, Plaintiff alleges that Defendants discriminated against him in violation of the ADA by giving him exams that were more difficult than non-disabled students' exams. (SAC at 29-34; Pl. Opp at 12-17.) Defendants assert that they are entitled to summary judgment on Plaintiff's ADA claims because there is no evidence that Plaintiff was denied the accommodations he requested, that his exams were more difficult than those taken by the non-disabled students, or that Defendants discriminated against Plaintiff because of his disability. (Defs. MSJ 12-13.)

Plaintiff has provided no evidence that he was denied accommodations, including extra time and rest breaks, for his learning disability by Defendants. Although Plaintiff's declaration states that he was denied the testing accommodations Defendants promised, he was given exams that were more difficult than the non-disabled students' exams, and Defendants declined to provide testing accommodations on future examinations because the State Bar had declined his request for special accommodations, these assertions

are contradicted by the evidence the Parties have presented.  First, the evidence shows that Plaintiff repeatedly received the exam accommodations he requested; there is no evidence that he was denied exam accommodations or that there were unaccommodated delays in the administration of his exams.  (See Fisher-Ogden Decl., Exs. 3-10.)  While there was one occasion during which Plaintiff inadvertently was not provided the extra time, ALU later provided remedial accommodations. (See Defs. SUF ¶ 12.)  Second, Plaintiff has not provided evidence showing that Defendants told him that he would not receive accommodations during future examinations because of the State Bar's decision.  The email Plaintiff provides only shows that Defendants told Plaintiff that his accommodations with ALU were under review and Plaintiff has not provided evidence that any of his requested accommodations were ultimately denied.  (See Shapiro Decl., Ex F.) Finally, Plaintiff cites only to his email to Dean Fisher-Ogden stating that the exam took longer than the time allotted because of the length of the fact patterns in order to show that he was given more difficult exams than non-disabled students were given. (See Shapiro Decl., Ex. C.)

The evidence in the record is insufficient to raise a triable issue of material fact as to whether Defendants denied Plaintiff accommodations for his

learning disability.  Cf. Federal Trade Commission v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.")

## 2.  Retaliation

In order to establish a prima facie claim for retaliation under the ADA, a plaintiff must show that: 1) he engaged in protected activity; 2) the defendant subjected him to an adverse action; and 3) there was a causal link between the protected activity and adverse action.  Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 849 (9th Cir. 2004).

Plaintiff alleges that Defendants retaliated against him for making repeated accommodation requests and asserting his rights under the ADA by refusing to provide letters of recommendation for scholarships, timely and accurate information to the California State Bar regarding his ALU testing accommodations, and access to Westlaw.  Defendants argue that Plaintiff did not engage in any protected activity, and he has not proven any retaliatory acts.  (Defs. MSJ at 13-14.)

"Pursuing one's rights under the ADA constitutes a protective activity."  Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9th Cir. 2004).  Courts

have construed requesting accommodations as a protected activity.  See Patterson v. City of Seattle, 97 F.3d 1460, at *4 (9th Cir. 1996), Connor v. Quest Diagnostics, Inc., 298 Fed. Appx. 564, 565-66 (9th Cir. 2008); Manning v. Tacoma Public Schools, No. 6-5078, 2007 WL 2495138, at *3 (W.D. Wa. Aug. 30, 2007).  It is undisputed that Plaintiff here engaged in a protected activity by making numerous requests for testing accommodations and services.  (Defs. SUF ¶ 9.)

However, the evidence before the Court confirms that Plaintiff was not subjected to any retaliatory acts by Defendants.  Defendants did not fail to provide the necessary documents to support Plaintiff's scholarship application or accurate information regarding Plaintiff's ALU testing accommodations to the California State Bar in a timely fashion.  Dean Fisher-Ogden submitted a letter to recommend Plaintiff for consideration as a scholarship awardee and a Certificate of Financial Need.  (Defs. SUF ¶¶ 13, 14.) Defendants also submitted the Form F to the California State Bar, reflecting the accurate information that Plaintiff was receiving an extra hour for every three hour examination, to the California State Bar on February 26, 2008, well before the initial May 15, 2008 deadline and the appeal deadline.  The Committee's decision on accommodation cites the information provided by ALU in the Form F (i.e., Plaintiff was

receiving 33% extra time on his ALU exams).  (Shapiro Decl., Exs. N-P.)

Additionally, Defendants did not deny Plaintiff access to Westlaw.  Plaintiff's access to Westlaw was regulated by Westlaw, who made the ultimate decision to continue the suspension of Plaintiff's account after repeated warnings.  (See Shapiro Decl., Ex. L.) Defendants had the authority to request that Westlaw reinstate Plaintiff's access and told Plaintiff they would do so provided Plaintiff sign the letter agreeing that if there were additional complaints about his unprofessional behavior, Plaintiff's access to Westlaw would end and his enrollment at ALU would be terminated.  Plaintiff refused to sign this letter. (See Shapiro Decl., Exs. H, I.)

Plaintiff has provided no evidence that Defendants denied him reasonable accommodations for his disability, he was given more difficult tests than non-disabled students, or that Defendants caused him to suffer any adverse action.  Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED as to Plaintiff's ADA claim.

**B.   Breach of Contract**

Under California law, a plaintiff asserting a breach of contract claim must establish: 1) the

existence of a contract with defendant; 2) plaintiff's performance or excuse for nonperformance; 3) defendant's breach; and 4) resulting damage to the plaintiff.  Crescent Woodworking Co., Ltd. V. Accent Furniture, Inc., No. 04-1318, 2007 WL 4144965, at *7 (C.D. Cal. May 7, 2007).

California courts have generally held that the relationship between a university and a student is contractual in nature.  See Zumbrun v. University of Southern California, 25 Cal. App. 3d 1 (1972) ("The basic legal relation between a student and a private university or college is contractual in nature.  The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become part of the contract.")  Defendants do not contest the existence of a contract.  Instead, they argue that Plaintiff has failed to identify the terms of the contract he alleges Defendants breached, other than violation of the ADA.  (Defs. MSJ 14-15.) However, Plaintiff's SAC identifies terms of a contract, citing to specific provisions of the Guidelines for Unaccredited Law School Rules that ALU allegedly breached.  These provisions require compliance with standards of the procedures and practices of school operation and fairness in student discipline, academic standards, and student assessment. (SAC at 38-44.)

Plaintiff claims that ALU did not satisfy its obligations under the Guidelines by violating the ADA, failing to provide Plaintiff with a hearing before being suspended because of his grades, terminating him from the school, failing to provide him access to Westlaw legal research, failing to provide a recommendation for a scholarship, and failing to provide information to the California State Bar for his FYLSX. (Pl. MSJ at 13-14; Pl. Opp. at 20-21.) Defendants argue that they are entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not provided evidence that Defendants have breached any contractual terms. The Court agrees.

As discussed above, Defendants did not violate the ADA, deny Plaintiff access to Westlaw, fail to provide a letter of recommendation for a scholarship, or fail to provide accurate information regarding his learning accommodations to the California State Bar in a timely manner. (See supra Section IV.A.) Plaintiff also has not provided any evidence that Defendants breached the contract by failing to provide him with an impartial hearing and process before being suspended because he has provided no evidence that he was suspended at all before his enrollment was terminated. Furthermore, ALU's decision to terminate Plaintiff's enrollment was not a breach of contract. The Guidelines, which

Plaintiff claims are part of his contract with ALU provide that "[a] student who does not pass the First-Year Law Students' Examination within three (3) administrations must be promptly disqualified from a law school's J.D. program."  Guidelines for Unaccredited Law School Rules ¶ 5.22 (2008).  Since Plaintiff failed the FYLSX three times (Defs. SUF ¶¶ 21, 26), ALU's termination of Plaintiff's studies was proper under the terms of the contract.

Accordingly, Defendants' motion to for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED as to Plaintiff's breach of contract claim.

**C.   Implied Covenant of Good Faith and Fair Dealing**

California law provides that a covenant of good faith and fair dealing is implied in every contract in order "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights [to] the benefits of the contract." Marsu B.V. v. Walt Disney Co., 185 F.3d 932, 938 (9th Cir. 1999)(citing Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles, 17 Cal. App. 4th 432, 447 (1993)); see also Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 371 (1992).  There can be a breach of the implied covenant even if no

30

express terms of the contract are breached.  <u>Keshish v. Allstate Ins. Co.</u>, No. 12-3818, 2013 WL 1729531, at *3 (C.D. Cal. April 22, 2013)(citing <u>Schwartz v. State Farm Fire and Cas. Co.</u>, 88 Cal. App. 4th 1329, 1339 (2001)).

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing by denying him proper accommodations for his disability, failing to provide accurate information to the California Bar, denying him access to Westlaw, and failing to send a letter of recommendation to the California Bar Foundation.  (SAC at 52.)  As discussed in detail above, there is no evidence that ALU breached the terms of its contract with Plaintiff.  Nor is there evidence that ALU engaged in any action extraneous to the contract that would frustrate Plaintiff's assumed contractual rights.  Instead, the evidence is clear that Defendants provided the letter of recommendation and Form F to the requesting organizations, did not deny any of Plaintiff's requests for accommodation even before receiving documentation of Plaintiff's disabilities from a doctor or psychologist, and offered Plaintiff the opportunity to have ALU request that his Westlaw account be reactivated.

Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary

judgment is DENIED as to Plaintiff's breach of implied covenant of good faith and fair dealing claim.

### D.   Negligent Infliction of Emotional Distress

"Negligent infliction of emotional distress is a form of the tort negligence, to which the elements of duty, breach of duty, causation and damages apply." Huggins v. Longs Drug Stores Cal., Inc., 6 Cal. 4th 124, 151 (1993).  Plaintiff alleges that he was the direct victim of Defendants' allegedly negligent conduct.  Therefore, to prove a claim for negligent infliction of emotional distress, Plaintiff must show that there is a recognized special relationship between Plaintiff and Defendants or a fiduciary duty that was assumed by Defendants, imposed on Defendants as a matter of law, or arose out of a relationship between Plaintiff and Defendants.  See Robinson v. U.S., 175 F. Supp. 2d 1215, 1225-26 (E.D. Cal. 2001) (quoting Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 590 (1989)); Cronkite ex rel. Cronkite v. Long Beach Unified School Dist., 176 F.3d 482, 1999 WL 196544, at *1 (9th Cir. Apr. 1, 1999) (Unpub. Disp.).

Plaintiff appears to argue that Defendants had a duty to "provide [] Plaintiff, a disabled law student a sound education including testing accommodations and services" because of the contractual duties the

Guidelines impose.  (SAC 55-58; Pl. Opp. at 25.)  Even if Defendants did owe Plaintiff a duty to provide accommodations, letters of recommendation, the form regarding his disability accommodations to the California State Bar, access to Westlaw, or adequate procedures before any suspension or disciplinary action, his claim fails.  Plaintiff has presented no evidence that creates a genuine dispute of fact as to whether Plaintiff was provided these items and services.  It is clear that Defendants did provide them.  Therefore, Plaintiff has not presented evidence that would establish the breach of a duty necessary to prevail on his negligent infliction of emotional distress claim.

Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED as to Plaintiff's negligent infliction of emotional distress claim.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.


Dated:  August 12, 2013          _____
                                       Jesus G. Bernal
                                United States District Judge